## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN KREMSNER** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 14-4282** |
| **CAROLYN W. COLVIN** | : | |
| **ACTING COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                     **September 11, 2015**

Plaintiff, Steven Kremsner, brought this counseled action pursuant to 42 U.S.C. § 405(g), seeking review the Commissioner of the Social Security Administration's decision denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1382–1383 (the "Act"). Defendant has filed a response and the matter is before me for a Report and Recommendation. For the reasons set forth below, I respectfully **RECOMMEND** that Plaintiff's request for review be **DENIED.**

## I.    PROCEDURAL HISTORY

Plaintiff was born on August 27, 1978 and was thirty-three years old as of his alleged disability onset date. (R. 198, 204). Plaintiff protectively filed for DIB and SSI on October 18, 2012, alleging disability since July 22, 2012, due major depressive disorder and anxiety.[1] (R.

---

[1] The record reflects that Plaintiff previously filed an application for DIB on October 12, 2005 and an application for SSI on September 29, 2005. (R. 18, 68-77). These applications were denied at the initial stage of review in 2006. (R. 78-80). Plaintiff filed a second SSI application in August 2012, which was denied in September 2012. (R. 116-17).

198, 204, 244-50).   Plaintiff has a tenth grade education, and has past relevant work experience
as a shelf stocker and telemarketer.  (R. 23, 254-56).  In February 2012, after the alleged onset
date, Plaintiff worked for two days as a security guard.  (R. 38).

Plaintiff's SSI and DIB applications were initially denied by the Bureau of Disability
Determination on January 24, 2013.  (R. 118-25).  Plaintiff filed a request for a hearing before an
administrative law judge ("ALJ") on April 1, 2013.  (R. 126-27).  A hearing was held before ALJ
Deborah Mande on November 7, 2013, at which Plaintiff, represented by an attorney, and a
vocational expert ("VE"), appeared and testified.  (R. 35-55).  On November 25, 2013, the ALJ
issued a decision finding Plaintiff not disabled and not entitled to benefits under the Act.  (R. 18-
28).  Plaintiff filed a request for review with the Appeals Council, (R. 14), which was denied
April 2, 2014, (R. 11-13), making the ALJ's decision the final decision of the Commissioner.
On July 16, 2014, Plaintiff filed the filed the above-captioned action to appeal the
Commissioner's decision.  (ECF No. 1).

The matter has been assigned to the Honorable Jan E. DuBois, who has referred to it to
the undersigned for preparation of a Report and Recommendation. (Order, ECF No. 10).

## II.    FACTUAL BACKGROUND

In his DIB and SSI applications, Plaintiff alleges inability to work due to major
depressive disorder.  (R. 60, 64, 245).  In his Function Report, he further alleged anxiety,
including racing thoughts, a racing heartbeat, sweatiness, nervousness, and shakiness in social
settings.  (R. 262, 265, 267).  The following summarizes the relevant medical evidence.[2]

---

[2]   The record also contains evidence from Plaintiff's prior disability applications,
including hospitalization records for a panic attack in 2004, (R. 288-98); results of a consultative
examination with Dr. Harold J. Pascal, M.D. on March 3, 2006, (R. 306-13); a psychiatric review
technique and mental residual functional capacity assessment completed by Agency psychologist

On July 23, 2012, Plaintiff presented at St. Luke's Hospital ("St. Luke's") in Allentown, Pennsylvania.  (R. 403, 461).  Upon admission, Dr. Stephen A. Prayson, D.O., the attending physician, observed that Plaintiff appeared anxious and extremely depressed with a tearful affect.  (R. 405-06).  Plaintiff explained that he felt overwhelmed by his situation, as he had recently received his second DUI citation, was unemployed, and was homeless.  (R. 472-73).  Dr. Prayson diagnosed Plaintiff with recurrent Major Depressive Disorder ("MDD") with suicidal tendencies and moderate to severe alcohol dependence, and gave him a Global Assessment of Functioning ("GAF") score of 21.  (R. 405-06).   On July 24, 2012, Dr. David Daley, D.O., who also treated Plaintiff at St. Luke's, completed a state welfare employability form in which he indicated that Plaintiff was temporarily disabled from July 22, 2012, to August 1, 2013, due to MDD.  (R. 331).

During his course of treatment at St. Luke's, Plaintiff began to take antidepressants and medication for alcohol withdrawal, and attend group therapy.  (R. 406, 417-18, 478, 550-77).  An August 14, 2012, discharge summary noted that Plaintiff's affect was improved, and that he denied any thoughts of self-harm.  (R. 406).  Plaintiff was discharged to Allentown Rescue Mission with instructions to seek follow- up care beginning on August 26, 2012, at Lehigh Valley Community Mental Health Centers ("Lehigh Mental Health").  (R. 403, 409).

---

Paul Perch on March 24, 2006, (R. 314-30); and treatment records from Plaintiff's primary care provider dated from March 20, 2005 to August 29, 2011, (R. 353-93).  The Court has independently reviewed these records, but notes that they predate the alleged disability onset date.  Accordingly, this evidence is not directly relevant to the adverse disability determination presently under review.

Plaintiff's treatment records from Lehigh Mental Health reflect that he first appeared for treatment on March 21, 2013.[3]  (R. 796).  In his Biopsychosocial Evaluation intake form, Plaintiff explained that he received his first DUI in 2011.  (R. 778).  In February 2012, he was removed from his home after his ex-girlfriend obtained a Protection From Abuse ("PFA") order due to threats he made while drinking.  (R. 770, 782).  His drinking thereafter worsened, and in July 2012, after drinking for the entire day, the police found Plaintiff in the middle of the road in a stopped truck, issued his second DUI, and took him to St. Luke's, where he received the above-mentioned treatment.  (R. 770, 778).  Plaintiff stated that he had abstained from alcohol since his discharge from St. Luke's.  (R. 772).

Dr. Hyung Y. Yeo, M.D., a psychiatrist at Lehigh Mental Health, also evaluated Plaintiff on April 9, 2013.  (R. 780-83).  His form report reflects that Plaintiff appeared causal, calm, and cooperative; was oriented to person, place, time and situation; and had normal and coherent speech.  (R. 780).  Dr. Yeo recorded that Plaintiff felt depressed and experienced intermittent panic attacks, but had a new girlfriend who offered him a good support system.  (R. 782).  Dr. Yeo affirmed Plaintiff's diagnosis of MDD, further diagnosed him with Generalized Anxiety Disorder, and assigned Plaintiff a GAF greater than or equal to 50 to 55.  (R. 782).

Plaintiff continued to receive treatment from Dr. Yeo between April 2013 and September 2013.[4]  (R. 785-95).  On September 3, 2013, Dr. Yeo completed a Medical Source Statement in support of Plaintiff's applications for DIB and SSI.  In this check-the-box form, he assessed Plaintiff with moderate impairment in the ability to understand, remember, and carry out simple

---

[3]  Plaintiff explained that he did not obtain treatment between August 2012 and April 2013 due to lack of insurance.  (R. 782).  However, Plaintiff informed the agency examiner in January 2013 that he obtained insurance in December of 2012.  (R. 337).

[4]  Plaintiff also attended therapy with Vivek Katara during this time.  (R. 796).  There are no treatment notes from Mr. Katara in the record, which Plaintiff explains is due to confidentiality concerns.  (Pl.'s Br. 9).

4

instructions, moderate impairment in the ability to make judgments on simple and complex work-related decisions, and marked impairment in the ability to understand, remember, and carry out complex instructions. (R. 797). He further assessed Plaintiff has having mild impairment in the ability to respond appropriately to typical work situations, and moderate impairment in his ability to interact appropriately with the public, with supervisors, and with co-workers. (R. 798).

On January 9, 2013, Plaintiff was examined by Dr. David J. Smock, a psychologist, at the request of the Social Security Administration. (R. 333-341). Dr. Smock observed in his psychological examination report that Plaintiff was fully cooperative with the evaluation, appeared oriented to person, place, and time, and experienced intermittent bouts of depression and anxiety, most recently culminating his hospitalization in July 2012. (R. 337). Upon testing, Dr. Smock concluded that Plaintiff's attention and concentration were impaired, as Plaintiff could not remember simple instructions or perform simple calculations without substantial difficulty. (R. 338). He affirmed Plaintiff's diagnosis of Generalized Anxiety Disorder with panic attacks, MDD, and alcohol dependence in remission. (R. 339).

Dr. Smock also completed a Medical Source Statement on January 9, 2013, in which he assessed Plaintiff with marked limitations in ability to understand, remember, and carry out simple instructions, and extreme limitation in his ability to ability to understand, remember, and carry out detailed instructions. (R. 333). He further indicated that Plaintiff had extreme limitation in all aspects of interacting and responding appropriately in the work setting. (*Id.*).

On January 24, 2013, State Agency psychological consultant Dr. Erin Urbanowicz, Psy. D., completed a Disability Determination Explanation Form. (R. 95-106). Based on her review of the records, she opined that Plaintiff had the ability to understand and remember one-to-two step tasks, and that he had no more than moderate limitation in concentration, social interaction,

or ability to adapt to work pressures in the normal work setting.  (R. 101-02).  She found that based on the above limitations, Plaintiff could perform simple, routine, and repetitive work involving simple instructions without special supervision.  (*Id.*).

## III.    LEGAL STANDARD

To receive DIB or SSI benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  A five-step sequential evaluation process is used to determine eligibility for disability benefits.[5]  The claimant bears the burden of establishing steps

---

[5]   The Commissioner uses the same five-step process to determine whether a claimant is disabled in both SSI and DIB cases.  *See* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI).  The steps are as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he [or she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his [or her] physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant

one through four, and then the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the national economy, in light of her age, education, work experience, and Residual Functional Capacity ("RFC").  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a denial of disability benefits is limited to determining whether there is substantial evidence to support the Commissioner's decision.  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence is a deferential standard, requiring "less than a preponderance" and only "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Though the Court's duty is "to scrutinize the record as whole to determine whether the conclusions reached [by the ALJ] are rational," *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979), the Court may not undertake de novo review of an ALJ's decision, nor may it re-weigh the evidence of record.  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (A

retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000).

reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder."); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). However, the court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *see also Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) ("[E]ven if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented.") (internal quotation omitted).

## IV.   ALJ'S DECISION

Following the administrative hearing on November 7, 2013, the ALJ issued a decision in which she made the following findings:

1.   Plaintiff meets the insured status requirement of the Social Security Act through December 31, 2016.

2.   Plaintiff has not engaged in substantial gainful activity since July 22, 2012, the alleged onset date.

3.   Plaintiff has the following severe impairments: major depressive disorder; and ETOH and cannabis abuse.[6]

4.   Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is restricted to simple, routine, and repetitive tasks, no interaction with the public, only occasional interaction with co-workers and supervisors, and his works should not involve any independent decision making.

6.   Plaintiff is unable to perform any past relevant work.

---

[6]   "ETOH is the chemical abbreviation for ethyl alcohol or ethanol, the medical term for alcohol." *Patrick v. Devon Health Servs., Inc.*, 828 F. Supp. 2d 781, 785 (E.D. Pa. 2011) (internal citation omitted)

7. Plaintiff was born on August 27, 1978 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform

(R. 20-27). Accordingly, the ALJ reached step five of the disability analysis and found Plaintiff was not disabled under the Act. (R. 28).

## V.    DISCUSSION

In his request for review, Plaintiff argues that the ALJ erred at step four in deriving the RFC because she failed to consider evidence of all of Plaintiff's impairments, and improperly weighed the medical opinions. (Pl.'s Br. 5-14, ECF No. 8). Plaintiff further contends the ALJ erred at step five because she relied on VE testimony that did not incorporate all of Plaintiff's credibly established limitations. (Id. at 14-15).

Having considered the arguments, the evidence of record, the ALJ's decision, and the hearing testimony, I recommend that Plaintiff's Request for Review be denied.

### A.    The ALJ's Consideration of Plaintiff's Impairments

Plaintiff first argues that the ALJ did not fully or fairly consider evidence of all of his impairments when evaluating his RFC. (Pl.'s Br. 6-9). Specifically, Plaintiff asserts that the ALJ unduly focused on Dr. Yeo's opinion from September 2013, that he was only moderately impaired, and failed to address Plaintiff's traumatic personal history, his testimony reflecting that he suffers from severe social anxiety, and Dr. Smock's assessment of his limitations. (Pl.'s Br. 6-8). Had the ALJ properly evaluated the evidence, Plaintiff contends, she would have found him entitled to a closed period of benefits between July 2012 and July 2013. (Id. at 9).

9

A claimant's RFC is the most the claimant can still do despite the limitations arising from his impairments.[7]  20 C.F.R. §§ 404.1545(a)(1), 416.945; *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) (not precedential).  RFC analysis is a function-by-function assessment that considers how the claimant's physical and mental limitations arising from his impairments may affect his ability to do work on a regular and continuing basis.  20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d).  In deriving the RFC, the ALJ must consider all relevant medical and other evidence and must consider limitations imposed by all of an individual's impairments, even those that are not "severe."  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also* SSR 96–8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).  Such evidence includes medical records; lay evidence; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; and descriptions and observations of limitations by the claimant and others.  20 C.F.R. §§ 404.1545(a)(3), 404.945(a)(3).  While an ALJ must consider all relevant evidence when determining the RFC, she need not discuss every piece of evidence included in the record.  *See Martin*, 547 F. App'x at 160 (ALJ does not have to "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records.") (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001)).  Ultimately, the Commissioner retains the final responsibility for determining a claimant's RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).

First, Plaintiff argues that the ALJ should have more fulsomely considered his traumatic life experiences, such as his mother's shooting and subsequent paralysis, and that his former girlfriend was the victim of a brutal assault.  (Pl.'s Br. 6-7).  Plaintiff explains that his

---

[7]  In this case, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but was limited to simple, routine, and repetitive tasks, no interaction with the public, only occasional interaction with co-workers and supervisors, and no independent decision-making.  (R. 22).

"longstanding psychiatric problems . . . have plagued him since childhood," that he has "difficulty coping emotionally with the complications of life that one experiences due to his mental health problems," and that "he experienced conflict in his life" which he was unequipped to deal with because his "layers of mental health problems." (*Id.*).  However, the Court finds no merit to the argument that the ALJ failed to consider this evidence.  In the decision, the ALJ noted Plaintiff's difficult upbringing, including his mother's injury, and referenced that much of Plaintiff's difficulty appeared to stem from inability to cope with "significant psychosocial stressors," including financial and familial instability.  (R. 23, 25).  Plaintiff's argument amounts to little more than recounting portions of the evidence before the ALJ, and explaining why, in his view, such evidence supported a finding of a closed period of disability.  However, this Court is not empowered to reweigh the evidence in the fashion proposed by Plaintiff.  *See Horst v. Comm'r of Soc. Sec.*, 551 F. App'x 41, 45 (3d Cir. 2014) ("[c]ourts are not permitted to re-weigh the evidence or impose their own factual determinations.") (not precedential) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)).  The ALJ appropriately considered evidence pertaining to Plaintiff's history, and her decision that he was not disabled during the relevant period is supported by substantial evidence.

Second, Plaintiff argues that the ALJ did not appropriately address Dr. Smock's opinion that he had significant problems sustaining attention and following directions in the work setting. (Pl.'s Br. 8).  This claim is belied by the decision, which reflects that the ALJ fully considered Dr. Smock's opinion.  The ALJ accurately relayed that Dr. Smock concluded that Plaintiff suffered from "high levels of anxiety," had difficulty performing certain simple calculations, and had memory recall issues.  (R. 24).  After reviewing these findings, the ALJ acknowledged that Dr. Smock imposed marked and extreme limitations upon Plaintiff's ability to perform cognitive

work-related activities, including extreme limitations in the ability to carry out, understand, and remember detailed instructions. (R. 26). However, the ALJ afforded Dr. Smock's opinion no weight on the basis that he appeared overly reliant on Plaintiff's subjective complaints, and because his opinion was contradicted by the opinion of Dr. Yeo, a treating source, who concluded that Plaintiff was only moderately impaired. (R. 26). Accordingly, the Court does not agree that the ALJ failed to consider probative record evidence from Dr. Smock. Though Plaintiff may disagree with the ALJ's decision to give this opinion no weight, substantial evidence supports the ALJ's determination.[8]

Third, Plaintiff asserts is that ALJ did not consider evidence pertaining to his anxiety and panic attacks; specifically, Plaintiff's testimony that his social anxiety is so severe that he experiences difficulty leaving his home even for short periods of time, such as to take out the trash.[9] (Pl.'s Br. 8-9). However, "[t]here is no requirement that the ALJ discuss in [her] opinion every tidbit of evidence included in the record." *Hur v. Barnhart,* 94 F. App'x. 130, 133 (3d Cir.

---

[8] The Court will further address this issue in subpart B, *infra.*

[9] Plaintiff also briefly challenges the ALJ's step two finding that Plaintiff's only severe impairments were MDD and substance abuse. He argues that he had additional severe impairments, including "anxiety disorder with panic attacks." (Pl.'s Br. 3). Given that both Dr. Yeo and Dr. Smock diagnosed Plaintiff with Generalized Anxiety Disorder and that Plaintiff testified at length regarding his anxiety symptoms, there is some support for Plaintiff's contention that the ALJ should have found this to be a severe impairment at step two. (R. 782, 339, 49-50). However, Plaintiff does not further develop this argument in his brief, and thus the Court is incapable of fully reviewing Plaintiff's claim.

To the extent Plaintiff raises a claim of error at step two, the Court notes that an ALJ's failure to find an impairment severe is typically harmless error, so long as the ALJ finds other impairments severe, continues the analysis, and considers the effects of all impairments at step four. *See Salles v. Comm'r of Soc. Sec.,* 229 F. App'x 140, 145 n.2 (3d Cir. 2007). Here, though the ALJ did not address at step two whether Plaintiff's anxiety and/or panic attacks constituted a severe impairment, he fully addressed these impairments and the limitations arising therefrom in the RFC analysis. Accordingly, any error in the ALJ's step two analysis does not require remand.

2001) (not precedential); *see also Schmidt v. Comm'r of Soc. Sec.,* No. 12-06825 SDW, 2013 WL 6188442, at *6 (D.N.J. Nov. 25, 2013) ("While the ALJ did not specifically recount and discredit every word of [claimant's] testimony, he was not under an obligation to have done so."). Here, the record reflects that the ALJ sufficiently addressed Plaintiff's testimony with regard to his symptoms arising from anxiety and panic attacks. Notably, the ALJ directly quoted Plaintiff's testimony from the administrative hearing that he was unable to work because, "I feel like people are looking at me constantly and I start shaking and I don't understand why. I get sweaty and clammy and freeze up and for some reason I freak out." (R. 23). In finding Plaintiff not fully credible in this respect, the ALJ explained that Plaintiff did not leave his prior jobs due to any issues with his anxiety or social functioning, but rather because of issues at home. (R. 23). The record reflects that Plaintiff testified that he quit his job as a security guard in February 2012 because that job was located in close proximity to his former girlfriend's home, and he could no longer be in the area after she obtained a PFA due to his threats. (R. 39). Likewise, Plaintiff testified that he left his job as a shelf-stocker at Walmart because he believed he needed to be home to care for his children; prior to that, he left his job of many years a telephone fundraiser due to layoffs and a reduction in his hours. (R. 40-41). Accordingly, the record supports the ALJ conclusion that Plaintiff was not fully credible regarding the alleged debilitating effects of his social anxiety.

Further, the ALJ noted in the RFC analysis that Plaintiff alleged experiencing regular debilitating panic attacks. (R. 25). She discredited this allegation because such occurrences were not well documented by the treating source records, Plaintiff responded to treatment, and Plaintiff's anxiety appeared related to external stressors such as housing insecurity, financial constraints, and relationship difficulties. (*Id.*). Substantial evidence supports the conclusion that

although Plaintiff experiences anxiety and panic attacks in part due to external stressors, he is able to manage his symptoms through consistent treatment.  For instance, Plaintiff's treatment notes at St. Luke's reflect that while he was initially depressed and anxious regarding his life situation, he felt better when distracted by television or group therapy, and medications such as Ativan were effective in reducing his anxiety.  (R. 474-76, 486).  Over time, Plaintiff reported overall improvement in his anxiety, (R. 406, 489-91); at time of discharge from the hospital, he expressed optimism about leaving hospital and returning to work.  (R. 493).  The ALJ reasonably concluded that Plaintiff's reports of disabling social anxiety and panic attacks were not fully credible.  Moreover, any credibly established limitations arising from Plaintiff's anxiety were accounted for in the RFC restricting Plaintiff to no public interaction and only occasional interaction with co-workers and supervisors.

Accordingly, the Court finds that the ALJ considered all of Plaintiff's alleged impairments in deriving the RFC, and substantial evidence supports his conclusion that Plaintiff retained the RFC to perform simple, routine, repetitive work at all relevant times.

### B.      The ALJ's Weighing of the Expert Opinions

Plaintiff next contends that the ALJ erroneously evaluated the medical opinions in the record.  (Pl.'s Br. 10-14).

A medical opinion from a treating source must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When a treating sources opinion is not deemed controlling, the amount of weight to which it is entitled is assessed in accordance with the factors provided in 20 C.F.R 404.1527 and 416.927, which also supply the factors used to weigh opinions from non-

treating sources.[10]  SSR 96–2p, 1996 WL 374188, at *4 (July 2, 1996).  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  *Id*.  Although treating source opinions often deserve more weight than non-treating or non-examining sources, state agent opinions merit significant consideration as well.  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d. 356, 361 (3d. Cir. 2013) ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs,  . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . .") (quoting citing SSR 96–6p, 1996 WL 374180 (July 2, 1996)).

Ultimately, the ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects."  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  An ALJ must always consider medical opinions together with the rest of the relevant evidence submitted, and "must explain the weight given to physician opinions and the degree to which a claimant's testimony is credited."  *Chandler*, 667 F.3d at 362; *see also Walker v. Astrue*, 733 F. Supp. 2d 582, 588 (E.D. Pa. 2010).  The ALJ has the duty to adequately explain the evidence that he rejects or to which he affords lesser weight, *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009), and the explanation "must be sufficient enough to permit the court to conduct a meaningful review." *Burnett*, 220 F.3d at 119-20.

In this case, the ALJ afforded great weight to Dr. Yeo's September 3, 2013 Medical Source Statement, in which he assessed Plaintiff as mildly-to-moderately impaired in seven out of the ten categories pertaining to cognitive work-related activities, with marked impairments only in understanding, remembering, and carrying out complex instructions.  The ALJ also

---

[10]  These factors include the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, and the physician's specialization.  20 C.F.R §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

afforded great weight to Dr. Urbanowicz, the Agency reviewer, who found Plaintiff only mildly

impaired.  (R. 25-26).   However, the ALJ gave no weight to Dr. Smock, the consultative

examiner who assessed Plaintiff with marked and extreme impairments.  (*Id.*).  Plaintiff

challenges the ALJ's decision to give great weight to Dr. Yeo's opinion, and no weight to Dr.

Smock's opinion.  (Pl.'s Br. 10-11).  Plaintiff further challenges the ALJ's analysis regarding the

GAF scores.  (*Id.* at 12-14).  The Court will address these arguments in turn.

### 1.    Dr. Yeo

Plaintiff first challenges the ALJ's decision to give great weight to the opinion of his

treating psychiatrist, Dr. Yeo.  (Pl.'s Br. 10-11).   Plaintiff argues that the ALJ improperly

afforded great weight to Dr. Yeo because she failed to expressly address his treatment note from

September 3, 2013 — the same day he completed the Medical Source Statement — in which he

noted that Plaintiff was "not able to work;" appeared increasingly forgetful, unfocused, and

angry; and had decreasing ability to interact with people.  (*Id.*); (R. 788).  According to Plaintiff,

this treatment note is "arguably" in conflict with the Medical Source Statement.  (Pl.'s Br. 10).

The ALJ explained that Dr. Yeo's opinion was entitled to great weight because it "[was]

generally supported by Dr. Yeo's treatment records as a whole which reflect some ups-and-

downs, but which further reflect the claimant functions relatively well when compliant with his

treatment."  (R. 25-26).  The ALJ reviewed Dr. Yeo's treatment notes as follows:

> Composite mental status examinations from April 2013
> through September 2013 generally reflect that the claimant
> presented as calm and cooperative with normal speech, coherent
> thought processes, and fair insight/judgment.  Moreover, early on
> in his treatment he acknowledged sleeping and feeling better on his
> medications.   At a June 4, 2013 encounter, he endorsed feeling
> stressed and "disgusted" due to his relationship problems with his
> girlfriend and economic constraints.   The record reflects his
> medications were titrated upwards.   In addition, in July he
> continued to endorse extreme stress and frustration, as his house

was being foreclosed upon and he had serious financial problems.
By August 2013, he noted he was sleeping better and his appetite
was good with his medication adjustment.  He also noted that he
was under a court order to commence ETOH rehabilitation in
September 2013.  At the most recent encounter, which took place
on September 24, 2013, the claimant reported feeling better on his
medications.

(R. 25).  Additionally, the ALJ found that Dr. Yeo's assessment was more "convincing,

persuasive and probative" than Dr. Smock's opinion that Plaintiff was markedly or extremely

impaired, because, as a treating source, "Dr. Yeo ha[d] better personal knowledge of the

[Plaintiff's] overall level of functioning."  (R. 26).

The Court finds the ALJ's decision to afford great weight to this treating source opinion

was in accordance with the Regulations and precedent of this Circuit, and was substantially

supported by the record.  It is well-established that "[a] cardinal principle guiding disability

eligibility determinations is that the ALJ accord treating physicians' reports great weight,

especially when their opinions reflect expert judgment based on continuing observation of the

patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d

Cir. 2000) (citations omitted); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355

(3d Cir. 2008).  Here, the ALJ expressly noted that Dr. Yeo was entitled to the preference

normally afforded to treating sources because his opinion reflected his observations of Plaintiff's

condition and progress over time.  (R. 26).  Furthermore, in determining that Dr. Yeo's opinion

was entitled to great weight, the ALJ expressly considered whether his opinion was consistent

with the other substantial record evidence.  She concluded that his opinion was consistent with

his treatment notes at Lehigh Mental Health, and the Court finds this determination to be

reasonable in light of the record.   As the ALJ indicated, though Plaintiff was assessed with

anxious and depressed thought content, the treatment notes reflected overall improvement in

April 2013 when he began to receive regular psychiatric treatment.  (R. 794-95).  The notes then

17

reflect that in May, June, and July of 2013, Plaintiff was distressed, nervous, and tearful, in part due to substantial financial difficulty, including the threat of foreclosure of his home.   (R. 792-93).  Dr. Yeo subsequently adjusted Plaintiff's medications upward.  (R. 790, 792).  Though Plaintiff initially reported no improvement, (R. 789), in the last treatment note in the record, dated September 24, 2013, he stated that his mood was overall better, he felt supported by his girlfriend, and that he planned to file for custody of his child.  (R. 787).  Thus, substantial evidence supports the ALJ's conclusion that the treatment notes are, on the whole, consistent with Dr. Yeo's subsequent finding of only moderate cognitive impairment.

To the extent Plaintiff argues the ALJ needed to expressly consider the September 3, 2013 treatment note or obtain clarification as to its meaning from Dr. Yeo, the Court does not agree.  Again, an ALJ is not required to cite to every piece of evidence in the record when rendering her decision, *Fargnoli*, 247 F.3d at 42, but rather must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Here, the ALJ's thorough review of the treatment notes and explanation as to why he found them consistent with Dr. Yeo's opinion suffice to meet this burden.  Additionally, Plaintiff has not explained how further consideration of this treatment note would result in a different determination on remand.  Dr. Yeo's note that Plaintiff was "not able to work" would be entitled to no special weight, as an ALJ is never bound by "any opinion that a plaintiff is disabled or cannot work, as this is an adjudicatory decision reserved exclusively for the ALJ."  *See* 20 C.F.R. §§ 404.1527(d)-(e), 416.927(d)-(e).  The other findings contained in that treatment note, including that Plaintiff had diminished focus, coping skills, and interaction with others, are not necessarily in conflict with the ALJ's reasoning that Dr. Yeo's notes reflect "some ups-and-downs," but are on the whole consistent with his assessment that Plaintiff was

only moderately impaired in cognitive functioning.  (R. 26).  Even if the ALJ had considered that Plaintiff was not improved on September 3, 2013, this conclusion would still reasonable in light of her reliance on the overall trend reflected in the treatment notes.  *See, e.g.*, *O'Brien v. Comm'r of Soc. Sec.*, No. 14-6889, 2015 WL 4041147, at *9 (D.N.J. July 1, 2015) (declining to remand where ALJ failed to explicitly discuss three reports submitted by physician that would not change ALJ's overall analysis of physician's opinion).

Accordingly, the Court finds that substantial evidence supports the ALJ's determination to give great weight to the opinion of Plaintiff's treating psychiatrist.

### 2.    Dr. Smock

Plaintiff also raises a passing argument that the ALJ should have afforded more weight to Dr. Smock.  (Pl.'s Br. 11).

As noted above, the ALJ considered Dr. Smock's findings, (R. 24), and his opinion that Plaintiff was markedly or extremely impaired in all cognitive work-related functions, but concluded that this opinion was entitled to no weight.  (R. 26).  She reasoned that:

> Dr. Smock examined the claimant on only one occasion and in reaching his "extreme" conclusions, he appeared to have relied too heavily on the claimant's subjective and unverifiable assertions to the detriment of the evidence of record.  Conspicuously, the claimant's treating psychiatrist opined the claimant would have only mild to moderate imitations in the various aspects of cognitive work related activities.  In this regard, I found Dr. Yeo's assessment, cited above, to be more convincing, persuasive and probative, as Dr. Yeo has better personal knowledge of the claimant's overall level of functioning.  Furthermore, Dr. Smock's findings are unsupported by the nature of the claimant's daily activities, which includes being a full-time caretaker of his 3-year old son.

(R. 26).  Plaintiff argues that the substantial evidence does not support the conclusion that Dr. Smock overly relied on Plaintiff's subjective complaints.  Rather, he asserts that Dr. Smock

relied on "his own assessment and observations during a thorough interview" and that Dr. Smock had to rely on the examination because Plaintiff did not obtain care while uninsured and thus, "the record is somewhat slim." (Pl.s' Br. 11).

The Court agrees with Plaintiff that the ALJ's conclusion that Dr. Smock's opinion was overly reliant on Plaintiff's subjective complaints is not well-supported by the record. Though portions of the Dr. Smock's examination report contain Plaintiff's description of his symptoms arising from his anxiety and depression, Dr. Smock also gave Plaintiff objective exercises to test his recent and longer-term memory, attention, and concentration. Dr. Smock observed that Plaintiff was, at times, unable to follow, comprehend, or remember even simple instructions. (R. 338). The record reflects that at least some of Dr. Smock's findings stemmed from his testing of Plaintiff's recall and memory. Accordingly, the ALJ's assertion that his entire opinion was due little weight because it based on Plaintiff's subjective complaints lacks record support.

However, contrary to Plaintiff's arguments, substantial evidence nonetheless supports the ALJ's determination to give no weight to Dr. Smock, and to instead credit Dr. Yeo. "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner*, 577 F.3d 500, 505-06 (3d Cir. 2009). However, "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted). Here, the ALJ explained that Dr. Smock's opinion assessing Plaintiff with extreme and marked impairments contradicted Dr. Yeo's opinion that Plaintiff was at most moderately impaired. (R. 26). In choosing to credit Dr. Yeo, the ALJ explained that she found Dr. Yeo's opinion to be credible because it was derived with the benefit of having observed Plaintiff over time, whereas Dr. Smock only saw Plaintiff on one occasion. This is an

appropriate reason to give less weight to an agency examiner as compared to a treating physician. *See* 20 C.F.R §§ 404.1527(d)(2)(i), 416.927(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Accordingly, substantial evidence supports the ALJ's determination that Dr. Smock's opinion should be afforded no weight.

### 3.   GAF Scores

Plaintiff's last challenge to the weighing of the evidence is that the ALJ erred in relying on his GAF score of 50 to 55, which was assessed on his intake form at Lehigh Mental Health. (Pl.'s Br. 11-13).  Plaintiff argues that a GAF of 50 to 55 is not clearly indicative of an ability to sustain work and that the ALJ relied only his highest GAF score, while failing to give proper weight to his GAF score of 21 while an inpatient at St. Luke's and his GAF score of 39, assessed on March 3, 2006, in his prior disability application.  (*Id.*).

Until recently, GAF scores were used by "mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults."[11] *Irizarry v. Barnhart*, 233 Fed App'x 189, 190 n.1 (3d Cir. 2007).  A GAF score is not considered to have a direct correlation to the severity requirements; "however, a GAF score constitutes medical evidence and must be addressed by the ALJ in making the disability determination."  *Watson v. Astrue*, No. 08–1858, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009) (citing *Colon v. Barnhart*, 424 F.Supp.2d 805, 812 (E.D. Pa. 2006)); *see also Dougherty v. Barnhart*, No. 05–5383, 2006 WL 2433792, at *9 (E.D. Pa. Aug. 21, 2006).

---

[11]  As Plaintiff points out, the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM–V") has discontinued the use of GAF scores.

This Court's review of the decision reflects that there is no merit to Plaintiff's claim that the ALJ did not address all of the GAF scores in the record, or that the ALJ overly relied on highest score.  In reviewing the medical records, the ALJ explained that when Plaintiff was admitted to St. Luke's in July 2012, he underwent a mental status examination in which his "speech was productive and this thought process was coherent, his cognitive functioning appeared average and his insight/judgment were sufficient for a voluntary commitment.  The clinical impression was alcohol dependence, moderate to severe, and the claimant was assessed an initial GAF of 21."  (R. 23).  Thus, she did address this score, but appropriately placed it in context, as it was assessed while Plaintiff was in the midst of moderate to severe alcohol dependency.   As the ALJ recounted, with treatment and medication, Plaintiff improved at the time of discharge from St. Luke's, though his GAF was not apparently reevaluated at that time. (R. 24).  The ALJ further noted that in April 2013, upon his intake at Lehigh Mental Health, he was given a GAF greater than or equal to 50 to 55.  (R. 24).  A GAF in this range, the ALJ noted, "generally correlates to a finding of moderate, but not work-preclusive mental health restrictions."  (R. 24).  Besides briefly mentioning this score in the context of reviewing all of Plaintiff's evidence from Lehigh Mental Health, the ALJ made no further mention of this GAF. With regard to the score given by Dr. Pascal in 2006, Plaintiff himself acknowledges that this score is "arguably not relevant, because of the remoteness of the date to the alleged to onset date."  (Pl.'s Br. 13).  Accordingly, all of the GAF scores in the record from the relevant time period were expressly considered by the ALJ, and there is no indication that the ALJ only relied on Plaintiff's highest score.

Accordingly, the Court finds remand for reevaluation of the GAF scores is not necessary.

C.      **ALJ's Reliance on VE Testimony**

Lastly, Plaintiff challenges the sufficiency of the ALJ's hypothetical to the VE.  (Pl.'s Br. 15-16).  He argues that the ALJ should have included additional limitations in the hypothetical, based on Dr. Smock's opinion and Plaintiff's testimony, which both demonstrate that Plaintiff would have difficulty maintaining attendance.  (*Id.*).  According to Plaintiff, this error was not harmless because the VE testified that there would be no jobs for someone with Plaintiff's impairments who was off task 25% of the time, or who was absent from work more than two days per month.  (Pl.'s Br. 15) (citing R. 54).

If a VE's answer to a hypothetical question is to be considered substantial evidence, the question must reflect all of a claimant's impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  The ALJ may proffer a variety of assumptions to the expert, but the VE's testimony concerning the claimant's ability to perform alternative employment may be considered for purposes of determining disability only if the question portrays the claimant's individual physical and mental impairments.  *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  However, in eliciting testimony from a VE, the ALJ's hypothetical need not contain every impairment alleged by the claimant, but must only convey all of the claimant's credibly established limitations.  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Christie v. Comm'r of Soc. Sec. Admin.*, 489 F. App'x 581, 585 (3d Cir. 2012).  If the record contains medically undisputed evidence of a specific impairment that is not included in the hypothetical, the expert's response is not considered substantial evidence. *Podedworny*, 745 F.2d at 218.

In the instant case, the VE testified in response to a hypothetical from Plaintiff's counsel: if Plaintiff was off task 25 percent of the time and missed more than two days of work per

month, there would be no jobs in the national economy available to him, in light of his age, experience, and RFC.  (R. 53-54).  However, the ALJ was not required to include these limitations in her hypothetical to the ALJ because they were not credibly established by the record evidence.  Plaintiff notes that Dr. Smock would have imposed extreme limitations on Plaintiff's ability to respond to work pressure and change in the normal work setting; however, as explained above, the ALJ appropriately gave no weight to this opinion on the basis that it was inconsistent with the treating source opinion of Dr. Yeo.  The only other evidence Plaintiff points to, in support his claim that the ALJ should have imposed additional limitations on his ability to regularly attend work, is his own testimony that he suffers from extreme anxiety even when performing routine household chores.  (Pl.'s Br. 15).  It is not entirely clear how this testimony in fact demonstrates that Plaintiff would not be able to focus 25% of the time, or would be absent more than two days per month.  In any event, the ALJ properly found Plaintiff's testimony regarding his anxiety and panic attacks not fully credible; accordingly, she did not need to credit any limitations arising therefrom in her hypothetical to the VE.

Accordingly, because the ALJ relied on a hypothetical to the VE that included all of the limitations found credible in the RFC analysis, the Court finds no error at step five.  The ALJ's conclusion, that work exists in the national economy that Plaintiff can perform in light of his RFC, is substantially supported by the record.

## VI.    CONCLUSION

After careful review of the ALJ's decision, the record, and the parties' arguments, I find the ALJ's decision applied the correct legal standards and was supported by substantial evidence. Therefore, I make the following:

24

## RECOMMENDATION

AND NOW, this __11TH__ day of September, 2015, it is RESPECTFULLY

RECOMMENDED that and Plaintiff's request for review be DENIED.


BY THE COURT:


__/s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE